AO 106 (Rev. 06/09)   Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Oklahoma

| | | |
|---|---|---|
| In the Matter of the Search of | | Case No. 19-MJ-246-JFJ |

THE APPLICATION OF THE UNITED STATES OF AMERICA
FOR SEARCH WARRANTS AUTHORIZING THE SEARCH AND
SEIZURE OF ITEMS DESCRIBED IN ATTACHMENT B, B-1,
AND B-2 FROM 1723 SOUTH 79th EAST AVENUE, TULSA,
OKLAHOMA 74112 (SUBJECT PREMISES), 2000 WHITE
TOYOTA COROLLA VIN# 1NXBR12E6YZ381964  PLATE#
IMJ735 (SUBJECT VEHICLE 1), AND 2004 SILVER
CHEVROLET TRAILBLAZER VIN# 1GNDS13S642127495
PLATE# FPB398 (SUBJECT VEHICLE 2)

)
)
)
)
)
)

**FILED UNDER SEAL**

**FILED**

NOV 2 0 2019

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

> See Attachment "A", "A-1" and "A-2"

located in the ___Northern___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized):*

> See Attachment "B", "B-1" and "B-2"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession With Intent to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Distribute and Conspiracy to Possess |
| 21 U.S.C. § 1956(h) | Conspiracy to Launder Monetary Instruments |

The application is based on these facts:

> See Affidavit of TFO William R. Mackenzie DEA, attached hereto.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO William R. Mackenzie DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11-20-19__

_____
*Judge's signature*

City and state:  Tulsa, OK

U.S. Magistrate Judge Jodi F. Jayne
*Printed name and title*



| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANTS AUTHORIZING THE SEARCH AND SEIZURE OF ITEMS DESCRIBED IN ATTACHMENT B, B-1, AND B-2 FROM 1723 SOUTH 79th EAST AVENUE, TULSA, OKLAHOMA 74112 (**SUBJECT PREMISES**), 2000 WHITE TOYOTA COROLLA VIN# 1NXBR12E6YZ381964 PLATE# IMJ735 (**SUBJECT VEHICLE 1**), AND 2004 SILVER CHEVROLET TRAILBLAZER VIN# 1GNDS13S642127495 PLATE# FPB398 (**SUBJECT VEHICLE 2**) | CASE NO.<br><br>AFFIDAVIT<br><br>**FILED UNDER SEAL** |

## I    BACKGROUND AND EXPERIENCE

William R. Mackenzie, being duly sworn under oath, states as follows:

1.  I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18 United States Code, Section 2516 and Title 21 United States Code, § 841.

2.  I have been deputized as a Task Force Officer with the Drug Enforcement Administration (DEA) and I am presently assigned to the Tulsa, Oklahoma office. I am also a police officer for the Tulsa Police Department and have been so for over eighteen years. I have a Bachelor's Degree in Criminal Justice from East Central University. Since becoming a Narcotics Detective with the Tulsa Police Department, I have participated in wire and physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants and reviews of taped conversations and drug records. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of

payment for such drugs.  I have been the primary investigator in more than five complex conspiracy cases prosecuted within the federal justice system.

3.  I have trained other narcotic detectives within the Tulsa Police Department's Special Investigations Division.  I have completed the Oklahoma State Bureau of Investigations Clandestine Laboratory Basic Safety Certification and Clandestine Laboratory Site Safety Officer courses presented by Network Environmental Systems. I have completed the Drug Enforcement Administration Basic Narcotics Investigator School. I have completed an Advanced Undercover Narcotics School. I have completed a Southwest Border Intelligence school and an Outlaw Motorcycle Gang school presented by the Association of Oklahoma Narcotic Enforcers.  I have completed a Complex Conspiracies school presented by the Midwest Counterdrug Training Center.  I have completed a Communication Exploitation Training presented by the Drug Enforcement Administration Special Operations Division.  I have received formal training in narcotics investigations from the Tulsa Police Academy, as well as informal training received from more experienced officers.

4.  I have participated in over 500 drug related criminal investigations. I have authored federal Title III affidavits and both state and federal search warrants. I have participated in several Title III investigations, purchased narcotics in an undercover capacity on numerous occasions, and executed controlled deliveries of narcotics.  I have interviewed hundreds of defendants involved in the use, manufacture, transportation, and illegal sale of controlled dangerous substances.  During the course of these interviews, I have inquired and learned how individuals involved in drug distribution schemes and networks use and disperse the illegal proceeds

generated from the illegal sale of controlled dangerous substances, including but not limited to chemicals commonly utilized in the illegal manufacture of methamphetamine.

5. I am presently assisting the Drug Enforcement Administration, Salt Lake City District Office ("DEA SLCDO") in an ongoing federal criminal investigation of Neil Kristopher CRANDALL ("CRANDALL") and Dawn Louise SPRINKLE ("SPRINKLE") for violations of Title 21 United States Code, § 841(a)(1), Distribution and Possession with Intent to Distribute a Controlled Substance, Title 21 United States Code, § 846, Conspiracy to Distribute and Conspiracy to Possess with Intent to Distribute a Controlled Substance and Title 18 United States Code, § 1956(h), Conspiracy to Launder Monetary Instruments ("SUBJECT OFFENSES").

6. Since this affidavit is being submitted for the limited purpose to obtain search warrants for the **SUBJECT PREMISES, SUBJECT VEHICLE 1,** and **SUBJECT VEHICLE 2,** I have not included details of every aspect of the investigation. My interpretations of certain statements or words are set forth in parenthesis and are based upon my knowledge of this investigation and my training and experience, including my lengthy experience investigating drug and money laundering related crimes. I learned the matters set out in this affidavit from my discussions with other law enforcement officers and personnel to include the Utah case agents, DEA Special Agent Aaron Henderson ("SA Henderson") and IRS-CI Special Agent Christian Mickelsen ("SA Mickelsen"), both assigned to the DEA SLCDO, and from my own investigation which caused me to believe the information to be true. Dates and times are approximate.

## II    PURPOSE OF AFFIDAVIT

7. This affidavit is in support of an application for a search warrant for the following premise:

    a. A residence occupied by CRANDALL and SPRINKLE located at 1723 South 79th East Avenue, Tulsa, OK 74112 referred herein as the **"SUBJECT PREMISES,"** further described in ATTACHMENT A which is attached to and incorporated herein.

    b. A vehicle owned by and registered to SPRINKLE, a 2000 WHITE TOYOTA COROLLA with VIN# 1NXBR12E6YZ381964 and Oklahoma plate# IMJ735, registered to the **SUBJECT PREMISES**, referred herein as **"SUBJECT VEHICLE 1,"** further described in ATTACHMENT A-1 which is attached to and incorporated herein.

    c. A vehicle owned by and registered to SPRINKLE and CRANDALL, a 2004 CHEVROLET TRAILBLAZER VIN# 1GNDS13S642127495 with Oklahoma plate# FPB398, registered to the **SUBJECT PREMISES**, referred herein as **"SUBJECT VEHICLE 2,"** further described in ATTACHMENT A-2 which is attached to and incorporated herein.

8. The purpose of the requested search warrant is to seize (1) property that constitutes evidence of the commission of drug and money laundering offenses under Title 21, United States Code, § 841(a)(1), Distribution and Possession with Intent to Distribute a Controlled Substance, Title 21, United States Code, § 846, Conspiracy to Distribute and Conspiracy to Possess with Intent to Distribute a Controlled Substance and Title 18, United States Code, § 1956(h), Conspiracy to Launder Monetary Instruments; (2) contraband, fruits of crime or things otherwise criminally possessed; and (3) property designed or intended for use which is or has been used as a means of committing a criminal offense from the **SUBJECT PREMISES, SUBJECT VEHICLE 1**, and **SUBJECT VEHICLE 2**.   The evidence to be searched for and seized is

described in ATTACHMENT B, ATTACHMENT B-1, and ATTACHMENT B-2 which are attached to and incorporated herein.

### III    FACTS ESTABLISHING PROBABLE CAUSE

**INVESTIGATION GENESIS**

9. In May of 2019, the DEA SLCDO began an investigation targeting the drug trafficking activities of a Salt Lake City methamphetamine drug trafficking organization ("DTO"). Agents conducted an investigation using a Confidential Source, a Cooperating Defendant, and an Undercover Agent to learn that a male identified as Alfredo BADILLO-Duarte (aka BADILLO-Duarte, "BADILLO-Duarte"), who resided in Las Vegas, Nevada, was distributing methamphetamine, heroin and cocaine, not only to DTO's in Utah, but also to individuals in many states across the United States to include Oklahoma. Further investigation revealed that Oklahoma residents, Neil CRANDALL ("CRANDALL") and Dawn SPRINKLE ("SPRINKLE"), were recipients of narcotics from BADILLO-Duarte and that BADILLO-Duarte was being supplied with narcotics by Jose "GODINEZ" GODINEZ ("GODINEZ") who resided in California.

10. On May 29, 2019, officers from SLCDO utilized a Confidential Source ("CS-1")[1] and an Undercover Agent ("UC-1") to complete a controlled purchase of approximately 9 pounds of methamphetamine from BADILLO-Duarte at a hotel in Salt Lake City, Utah. During this controlled purchase, agents observed BADILLO-Duarte, Edna MARTINEZ-Contreras ("MARTINEZ-Contreras"), and Adrian DIAZ-Castillo ("DIAZ-Castillo") actively participate

---

[1] CS-1 presently has no pending charges and is a paid DEA informant. CS-1 has a criminal history including two felony convictions: one for narcotics trafficking and one for possession of a weapon by a restricted person. The information provided by CS-1 has proven reliable and has been verified by other evidence gathered.

in the transaction. BADILLO-Duarte set up the deal location with CS-1 and spoke to the UC-1 at the buy location. BADILLO-Duarte discussed pricing, and ultimately received and counted the $18,000 provided for the purchase of the 9 pounds of methamphetamine. Additionally, Agents observed MARTINEZ-Contreras carrying a portion of the methamphetamine to the buy location. Agents then observed DIAZ-Castillo temporarily leave the buy location and return with the remainder of the methamphetamine. During the methamphetamine transaction, BADILLO-Duarte talked about businesses that he owned. BADILLO-Duarte stated he had a body shop and can switch the cars so they can move the shit. MARTINEZ-Contreras said they were opening a store and BADILLO-Duarte added it was a clothing store. BADILLO-Duarte said they (BADILLO-Duarte and MARTINEZ-Contreras) had 4 businesses right now which included horse racing, the body shop, the clothing store and a cleaning company. BADILLO-Duarte said that is why they don't get dirty when they come in case they check them for something. BADILLO-Duarte displayed a picture from his phone of his cleaning business and it was called General Cleaning Services of Nevada, LLC. BADILLO-Duarte stated they clean the cops' station in Las Vegas. MARTINEZ-Contreras confirmed this information and said that she had 3 years working for them (cleaning the cops' station in Las Vegas). After the methamphetamine transaction was complete, BADILLO-Duarte, MARTINEZ-Contreras, and DIAZ-Castillo exited the hotel in Salt Lake City, UT with the $18,000 in cash, entered their vehicle, and departed the area.

## RECORDS AND CORROBORATING EVIDENCE

11. During the investigation, a bank account was identified for General Cleaning Services of Nevada, LLC at Bank of America with account# XX9782 (B of A acct# XX9782) Authorized

signers on the account were BADILLO-Duarte and MARTINEZ-Contreras. CRANDALL and SPRINKLE made substantial cash deposits to B of A acct# XX9782 based on bank records and bank surveillance footage. Additional details are provided in subsequent sections.

12. During the investigation, substantial phone toll records were obtained and the records were analyzed. The analysis detected a few phone numbers with Tulsa, OK "918" area codes that were in contact with BADILLO-Duarte, MARTINEZ-Contreras and other members of BADILLO-Duarte's DTO. The Tulsa, OK phone numbers of interest were 918-XXX-2624 and 918-XXX-2899. Phone toll records revealed that both of these phone numbers are subscribed to CRANDALL, were activated in 2018, and are still active as of November 15, 2019. CRANDALL did not list the **SUBJECT PREMISES** address when these phones were activated. Research, surveillance, and further investigation into CRANDALL revealed that CRANDALL's significant other is SPRINKLE. Additional details are provided in subsequent sections.

**CHRONOLOGICAL LISTING OF RELEVANT EVENTS AND EVIDENCE**

13. The following section provides a chronological listing of relevant events and evidence involving traffic stops, court-authorized wire intercepts, phone toll records, surveillance, and bank deposits consisting of cash.

**May 1, 2019**

14. A cash deposit of $1,424 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 6, 2019**

15. A cash deposit of $1,000 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 7, 2019**

16. A cash deposit of $1,350 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 11, 2019**

17. A cash deposit of $2,556 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 13, 2019**

18. A cash deposit of $1,573 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 21, 2019**

19. A cash deposit of $1,000 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 23, 2019**

20. A cash deposit of $1,000 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 28, 2019**

21. A cash deposit of $1,230 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 29, 2019**

22. As detailed in the previous section, on this day, an undercover agent completed a controlled purchase of approximately 9 pounds of methamphetamine from BADILLO-Duarte, MARTINEZ-Contreras, and DIAZ-Castillo at a hotel in Salt Lake City, Utah.

23. A cash deposit of $1,407 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**May 30, 2019**

24. A cash deposit of $1,502 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown.

**June 3, 2019**

25. On June 3, 2019, Nika Eloisa SALAZAR ("SALAZAR"), was arrested during a traffic stop in Murray, Utah, while in possession of approximately five kilograms of methamphetamine and over $15,000 in drug proceeds. After her arrest, agents believe SALAZAR worked as a drug

distributor in Utah under the direction of GODINEZ. Agents learned through their investigation that GODINEZ was a source of supply for BADILLO-Duarte.

**June 4, 2019**

26. A cash deposit of $2,840 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown. Phone toll records indicate that Target Telephone 1, ("TT1")(details provided below on July 26, 2019) contacts with CRANDALL's phone# 918-XXX-2624.

**June 11, 2019**

27. Cash deposits of $1,120 and $405 were made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown. Phone toll records indicate that MARTINEZ-Contreras' phone, 702-XXX-5950 had 8 contacts with CRANDALL's phone# 918-XXX-2899 on that same date.

**June 12, 2019**

28. A cash deposit of $1,511 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown. Phone toll records indicate that MARTINEZ-Contreras' phone, 702-XXX-5950 had 5 contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**June 26, 2019**

29. A cash deposit of $2,044 was made to B of A acct# XX9782 in Tulsa, OK. The depositor was SPRINKLE and CRANDALL was inside **SUBJECT VEHICLE 1** with SPRINKLE as documented by bank surveillance footage.

**July 15, 2019**

30. A cash deposit of $1,393 was made to B of A acct# XX9782 in Tulsa, OK. The depositor was SPRINKLE and CRANDALL was inside **SUBJECT VEHICLE 1** with SPRINKLE as documented by bank surveillance footage.

31. A cash deposit of $900 was made to B of A acct# XX9782 in Tulsa, OK. The depositor was CRANDALL inside **SUBJECT VEHICLE 2** as documented by bank surveillance footage.

**July 26, 2019**

32. On July 26, 2019, SA Henderson obtained a federal court-authorized wire intercept order for a cell phone (Target Telephone 1, "TT1") used by BADILLO-Duarte to facilitate drug and money laundering transactions[2]. On August 26, 2019, SA Henderson obtained a federal court-authorized wire intercept renewal order for TT1[3]. The authorized intercepted communications provided details regarding BADILLO-Duarte's vast drug and money laundering operation that spanned from obtaining narcotics from GODINEZ, GODINEZ's contacts in California, and other sources in California, to distributing narcotics to, and collecting drug proceeds from, individuals in Oregon, Utah, Oklahoma, Kansas, and other areas. Most of the intercepted communications were in Spanish and then translated to English in line sheets. A sampling of court-authorized intercepted communications (summarized/paraphrased) for TT1 relevant to this complaint are listed below with the corresponding call number.

33. A cash deposit of $1,356 was made to B of A acct# XX9782 in Tulsa, OK. The depositor was CRANDALL inside **SUBJECT VEHICLE 2** as documented by bank surveillance footage.

**July 29, 2019**

34. A cash deposit of $1,175 was made to B of A acct# XX9782 in Tulsa, OK. The depositor for was CRANDALL inside **SUBJECT VEHICLE 2** as documented by bank surveillance footage.

**August 4, 2019**

---

[2] Title III Court Order# 2-19SC109, District of Utah, U.S. District Court Chief Judge Robert J. Shelby
[3] Title III Court Order# 2-19SC119, District of Utah, U.S. District Court Chief Judge Robert J. Shelby

35. Call# 513 – TT1 - BADILLO-Duarte and GODINEZ - BADILLO-Duarte said he just called to confirm that he got 9 pesos (poss. $9,000) in his hands. GODINEZ acknowledged and said that was great. GODINEZ asked when BADILLO-Duarte will be back in Las Luces [lit. the lights/Las Vegas]. BADILLO-Duarte said he will be going down to him. BADILLO-Duarte said he will be over there (GODINEZ) around 12 or 1. GODINEZ asked if there is any way for BADILLO-Duarte to bring the truck. BADILLO-Duarte said to GODINEZ, tell your buddy that since I'm taking the 9 pesos (poss. $9,000), to have him, to have him loose up the 10 for me, to not be mean so that I can go to Oklahoma to drop off those 10. Eh... of the dark (poss. heroin), and... bring back the paper (poss. drug proceeds) of the other ones. GODINEZ tells BADILLO-Duarte to come over and they will talk to his buddy.

36. Call# 514 – TT1 – BADILLO-Duarte and GODINEZ - BADILLO-Duarte told GODINEZ that he is heading over to him and he'll arrive around 12 or 1. BADILLO-Duarte said he will then head to Oklahoma, and he will get the papers (poss. drug proceeds) for the ones of water that they are going to deliver in a little while. GODINEZ acknowledged. BADILLO-Duarte said that he will then return and bring him the little truck. GODINEZ acknowledged. GODINEZ insisted he needed the little truck to move some water (poss. methamphetamine) over to where he had told him. BADILLO-Duarte said he will find out how much paper (poss. drug proceeds) he is going to get when his guys deliver. BADILLO-Duarte said it will take him 3 days to get to where they are at, so they will have more paper (poss. drug proceeds) by then. BADILLO-Duarte said he has 9 pesos (poss. $9,000) now and would need another 3 pesos (poss. $3,000) to pay off the first 10. GODINEZ acknowledged. GODINEZ said that the guy [buddy/sos] could work with him, but that they probably want BADILLO-Duarte to pay off more.

Page **11** of **32**

BADILLO-Duarte told GODINEZ that these were not for his clients, they were clients of those other fuckers. GODINEZ acknowledged. BADILLO-Duarte said that once those are paid, they [third parties] will want another 10 or 15. BADILLO-Duarte added that the 10 will be for himself [BADILLO-Duarte]. BADILLO-Duarte said he can pay the 10 off in 1 1/2 or 2 weeks.

**August 7, 2019**

37. On August 7th and 8th, 2019, members of the DEA Tulsa office, conducted surveillance on BADILLO-Duarte. Details of this surveillance are as follows:

38. On August 7, 2019, HSI SA Darren Collins observed a 2011 white Mercedes Benz with Nevada license plate# XXXG62 parked in the driveway of the **SUBJECT PREMISES**. This is a known vehicle used by BADILLO-Duarte. I observed both a 2000 white Toyota Corolla with Oklahoma license plate# IMJ735 (**SUBJECT VEHICLE 1**) and a 2004 silver Chevrolet Trailblazer with Oklahoma license plate# FPB398 (**SUBJECT VEHICLE 2**) parked in the driveway of the **SUBJECT PREMISES**. According to Oklahoma DMV records, the registered owner of **SUBJECT VEHICLE 1** is SPRINKLE. The registered owner of **SUBJECT VEHICLE 2** is SPRINKLE with CRANDALL listed as the secondary owner. Both vehicles are registered to the **SUBJECT PREMISES**.

39. A cash deposit of $740 was made to B of A acct# XX9782 in Tulsa, OK. Depositor unknown. Phone toll records indicate that MARTINEZ-Contreras' phone, 702-XXX-5950 had 5 contacts with CRANDALL's phone# 918-XXX-2899 on August 7, 2019.

**August 8, 2019**

40. On August 8, 2019, SA Taylor Wilson observed BADILLO-Duarte and MARTINEZ-Contreras exit the Avid Hotel located at 8007 South Mingo Road, Tulsa, OK. MARTINEZ-

Contreras was rolling a large suit case. BADILLO-Duarte placed the suit case in the trunk of the white Mercedes and BADILLO-Duarte entered the driver's seat while MARTINEZ-Contreras entered the passenger seat and they departed the area. Surveillance followed BADILLO-Duarte and MARTINEZ-Contreras to the **SUBJECT RESIDENCE** where they arrived at approximately 12:42 PM. SA Wilson observed BADILLO-Duarte and MARTINEZ-Contreras enter the **SUBJECT RESIDENCE**. At approximately 1:13 PM, SA Wilson observed BADILLO-Duarte and MARTINEZ-Contreras depart from the **SUBJECT RESIDENCE** in the white Mercedes.

41. At approximately 2:33 PM, HSI SA Collins observed BADILLO-Duarte arrive at a Bank of America located at 10802 East 31st Street in Tulsa, OK. At this time, SA David King observed BADILLO-Duarte appear to conduct a transaction in the drive thru at the Bank of America. Prior to arriving at the bank, BADILLO-Duarte drove to multiple shopping centers.

42. After departing the Bank of America, BADILLO-Duarte drove to several O'Reilly Auto Parts and multiple oil change businesses. At approximately 4:10 PM, TFO Tony Finnegan observed BADILLO-Duarte and MARTINEZ-Contreras return to the **SUBJECT PREMISES** and park in the driveway. At approximately 5:14 PM, SA Wilson observed BADILLO-Duarte and MARTINEZ-Contreras depart from the **SUBJECT PREMISES** and travel out of town. The surveillance was terminated.

43. A cash deposit of $560 was made to B of A acct# XX9782 in Tulsa, OK. The depositor is believed to be BADILLO-Duarte based on the above surveillance.

**August 10, 2019**

44. A cash deposit of $1,200 was made to B of A acct# XX9782 in Tulsa, OK. The depositor for

was CRANDALL inside **SUBJECT VEHICLE 2** as documented by bank surveillance footage.

**August 11, 2019**

45. A cash deposit of $1,180 was made to B of A acct# XX9782 in Tulsa, OK. The depositor for was CRANDALL inside **SUBJECT VEHICLE 2** as documented by bank surveillance footage.

**August 14, 2019**

46. A cash deposit of $1,312 was made to B of A acct# XX9782 in Tulsa, OK. The depositor for was SPRINKLE inside **SUBJECT VEHICLE 1** as documented by bank surveillance footage.

**August 18, 2019**

47. Call# 1409 – TT1 - BADILLO-Duarte and CRANDALL phone# 918-XXX-2624, text message from CRANDALL's phone, I did talk to the guy. I told him that I'm far away/retired. He's going to call you right away (text was in Spanish).

48. Call# 1410 – TT1 - BADILLO-Duarte and CRANDALL phone# 918-XXX-2624, text message from CRANDALL's phone, What does that mean.

49. Call# 1414 – TT1 – BADILLO-Duarte and MARTINEZ-Contreras - MARTINEZ-Contreras asked how much is left in the card. BADILLO-Duarte said MARTINEZ-Contreras has 77 dollars left and he [BADILLO-Duarte] has 0 money in his pocket. MARTINEZ-Contreras said she's not going [U/I]. BADILLO-Duarte says he has no problems with it and he doesn't know what's wrong with MARTINEZ-Contreras BADILLO-Duarte said tomorrow he has to go to California and from Oklahoma up there [unspecified] and if MARTINEZ-Contreras's going to be sick, he's not going to take her. MARTINEZ-Contreras said she's not in a bad mood [U/I]

BADILLO-Duarte said he's not calling MARTINEZ-Contreras because he ended badly with the guy [U/I]. BADILLO-Duarte says [U/I] the guy sent a message that he didn't like at all. BADILLO-Duarte said he told the guy [unspecified] he had nothing to talk to the white guy about because he already talked to the guy [unspecified] and told him he was busy, so for him to tell the guy that's what he [BADILLO-Duarte] said and that he [BADILLO-Duarte] will call him when he's ready. BADILLO-Duarte said now the guy's going to be screwed and he'll have to see how to take the money down and GODINEZ will need to take care of things. BADILLO-Duarte said no one has to talk to him like that because he [BADILLO-Duarte] is doing a favor.

**August 19, 2019**

50. Call# 1454 – TT1 – BADILLO-Duarte and CRANDALL phone# 918-XXX-2899, text message to CRANDALL's phone, Can u answer please down.

51. Call# 1455 – TT1 – BADILLO-Duarte and CRANDALL phone# 918-XXX-2899, text message to CRANDALL's phone, I wanna leave everything straight.

52. A cash deposit of $1,200 was made to B of A acct# XX9782 in **Tulsa, OK**. The depositor was SPRINKLE inside **SUBJECT VEHICLE 1** based on bank surveillance footage. Phone toll records indicate that MARTINEZ-Contreras' phone, 702-XXX-5950 had 7 contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**August 21, 2019**

53. Phone toll records indicate that MARTINEZ-Contreras' phone, 702-XXX-5950 had 34 contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**August 22, 2019**

54. Phone toll records indicate that MARTINEZ-Contreras' phone, 702-XXX-5950 had 28

contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**August 23, 2019**

55. Call# 1781 – TT1 – BADILLO-Duarte and Miguel GUERRERO ("GUERRERO") - BADILLO-Duarte stated that he is with MARTINEZ-Contreras looking at a place that he saw this morning while doing community service. Parties continued talking socially about his community service. BADILLO-Duarte said that by Tuesday the things would be here (BADILLO-Duarte's location). GUERRERO acknowledged. BADILLO-Duarte says that he already had the first 30 in cash. GUERRERO acknowledged. BADILLO-Duarte said that it is 18 bucks (poss. $18,000). GUERRERO acknowledged. BADILLO-Duarte affirmed and said that he is going to bring more that is 5 pesos (poss. $5,000) in profit plus the 10 (poss. $10,000) they already got. GUERRERO acknowledged. BADILLO-Duarte said that he is leaving at 5 to get on the plane at 7 and then pick up his Mercedes in Oklahoma. BADILLO-Duarte said that he will then go to see his guy and pick up the money and from there he (BADILLO-Duarte) will head back to Oklahoma to take (U/I). BADILLO-Duarte said that from there he will head back.

56. Phone toll records indicate that MARTINEZ-Contreras' phone, 702-XXX-5950 had 10 contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**August 24, 2019**

57. Call# 1909 – TT1 – BADILLO-Duarte and MARTINEZ-Contreras – BADILLO-Duarte asked MARTINEZ-Contreras to send a message to Dawn (believed to be SPRINKLE) and MARTINEZ-Contreras said she already did. BADILLO-Duarte said to tell her that he (BADILLO-Duarte) doesn't have anything and that he is stuck in the middle of nowhere and

see what she (Dawn, poss. SPRINKLE) says. MARTINEZ-Contreras acknowledged.

58. Phone toll records indicate that MARTINEZ-Contreras's phone, 702-XXX-5950 had 6 contacts with CRANDALL's phone# 918-XXX-2624.

**August 28, 2019**

59. Call# 2098 – TT1 - BADILLO-Duarte to Bank of America - UF came to the phone and asked BADILLO-Duarte for his Card number. BADILLO-Duarte provided XXXX-XXXX-XXXX-3233, business card, General Cleaning services of Nevada (for B of A acct# XX9782). BADILLO-Duarte asked questions about his overdraft fees on his card. BADILLO-Duarte said that the charges in Oklahoma were him and that the Uber was his as well.

**August 30, 2019**

60. Call# 2287 – TT1 – BADILLO-Duarte and VICTOR - VICTOR asked if he (VICTOR) is going to go with ADAN. VICTOR asked if ADAN can't go on his own. BADILLO-Duarte said (U/I). VICTOR asked if it is without a license. BADILLO-Duarte affirmed. VICTOR asked how far is it going to be. BADILLO-Duarte said to Kansas City. VICTOR asked how many waters (poss. methamphetamine) it is. BADILLO-Duarte said 18. VICTOR asked if they need to go directly. BADILLO-Duarte negated and said that they can stop at a hotel. VICTOR acknowledged.

61. Call# 2294 – TT1 – between BADILLO-Duarte and an unidentified male ("UM1") with a phone number ending in 8502. BADILLO-Duarte asked UM1 if he knows anyone that is willing to do transports. UM1 said that he has 2 waiting but the problem is that they charge a lot. UM1 asks BADILLO-Duarte if he wanted one. BADILLO-Duarte affirmed. UM1 said that he will call one and asked where is the push to. BADILLO-Duarte said to Kansas. UM1 asked

how much he is paying. BADILLO-Duarte said to find out how much they charge. BADILLO-Duarte added that it is 6 pounds (poss. methamphetamine) and 30 of the brown (poss. heroin). UM1 says that he will check and let him know.

62. Call# 2295 – TT1 – between BADILLO-Duarte and an unidentified male ("UM2") with a phone number ending in 1122. BADILLO-Duarte said that he is looking for someone to go out. UM2 asked to where and BADILLO-Duarte said to Kansas. UM2 asked to take what. BADILLO-Duarte said 6 pounds (poss. methamphetamine) and 30 browns (poss. heroin).

63. Phone toll records indicate that MARTINEZ-Contreras's phone, 702-XXX-5950 had 2 contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**August 31, 2019**

64. Call# 2347 – TT1 - BADILLO-Duarte and VICTOR (using ADAN's phone)[4]. BADILLO-Duarte asked how VICTOR et al are doing. VICTOR said that they're arriving, 3 hours away. BADILLO-Duarte asked if to arrive to Tulsa. VICTOR affirmed and asked if they'll get on the 35 in Tulsa, or the 40. BADILLO-Duarte told VICTOR that the 40 doesn't go all the way over there, that he has to split it. VICTOR said that when they're (VICTOR and ADAN) closer, BADILLO-Duarte should call VICTOR back to have them send the address of where they're (VICTOR and ADAN) going.

65. Call# 2359 – TT1 – BADILLO-Duarte and ADAN text message to ADAN, BADILLO-Duarte sent a text message to ADAN containing the **SUBJECT PREMISES** address.

---

[4] VICTOR (Victor BADILLO-Valdiviezo, "VICTOR") and ADAN (Adan DOMINGUEZ, "ADAN") are part of BADILLO-Duarte's DTO and their responsibilities included transporting narcotics and drug proceeds for BADILLO-Duarte. Both VICTOR and ADAN were included in the same indictment as BADILLO-Duarte in the conspiracy to distribute methamphetamine and heroin counts and the conspiracy to commit money laundering count.

66. Call# 2360 – TT1 – BADILLO-Duarte and ADAN text message from ADAN, Should we take the package out there or should I take it out beforehand?

67. Call# 2361 – TT1 – BADILLO-Duarte and ADAN text message to ADAN, Take it out there.

68. Call# 2364 – TT1 – BADILLO-Duarte and ADAN - BADILLO-Duarte said that it is a house and that they can take it out there and that it is a house (believed to be referring to **SUBJECT PREMISES**). ADAN acknowledges. BADILLO-Duarte told ADAN that it is a white guy (believed to be CRANDALL) and that they are workers from there. BADILLO-Duarte added that he sent them the number of his uncle (Victor) and that they should be calling soon. ADAN acknowledged and asked if the guy will be paying. BADILLO-Duarte negated. BADILLO-Duarte asked ADAN if they are close by. ADAN says that they are close. ADAN asked if they should go to Kansas or if they should rest and go tomorrow morning. ADAN said to drive around and to do it tomorrow morning. ADAN acknowledged and said that they are tired. BADILLO-Duarte told ADAN to get a hotel next to the airport. BADILLO-Duarte suggested that they got to the Layton (PH) hotel. ADAN acknowledged. BADILLO-Duarte said to let him know if they are going to run out (Poss. Money) and that he will call in the morning to make sure they have the 200 to come back. ADAN affirmed and said that they are running out but should have enough for the hotel but that would be it.

69. Call# 2369 – TT1 – BADILLO-Duarte and ADAN. ADAN said that BADILLO-Duarte had said that a white guy (believed to be CRANDALL) was going to call the uncle. BADILLO-Duarte acknowledged. ADAN said that it is a lady (believed to be SPRINKLE) that is calling. ADAN asked if that is a problem. BADILLO-Duarte negated.

70. Call# 2375 – TT1 – BADILLO-Duarte and VICTOR (Using ADAN's phone). VICTOR

explained that his phone turned off and does not have directions. VICTOR asked what the exit is when you are on the 44 eastbound. BADILLO-Duarte asked VICTOR if they are on the freeway to Tulsa. VICTOR affirmed. BADILLO-Duarte said that it is the 21. BADILLO-Duarte said to get off on the Kelly drive exit because they won't be able to get off right on 21. BADILLO-Duarte said that once they get off the freeway it will only be like 4 minutes. ADAN got on the phone and BADILLO-Duarte gave ADAN directions to the address previously texted (call# 2359, **SUBJECT PREMISES**).

71. Call# 2379 – TT1 – BADILLO-Duarte and VICTOR (Using ADAN's phone). BADILLO-Duarte asked  VICTOR if he would like for him (BADILLO-Duarte) to talk to the lady (believed to be SPRINKLE) so that she can show them where the bank and the hotel is at. VICTOR affirmed. Parties talk about the different hotels they can go to. BADILLO-Duarte said *unintelligible* price. VICTOR affirmed that it is 100 and said that they gave him (VICTOR) 120. BADILLO-Duarte acknowledged and said that they (believed to be CRANDALL and SPRINKLE) are going to give VICTOR around 1000 in the morning. VICTOR acknowledged and said that is what he had been told. BADILLO-Duarte said that he will text the lady (believed to be SPRINKLE) to recommend something good to eat and that they should follow her to the Chase bank and to the hotel. VICTOR acknowledged and parties continued to discuss different hotels that they could stay at.

72. Phone toll records indicate that VICTOR's phone, 702-XXX-1078 had 7 contacts with CRANDALL's phone# 918-XXX-2899. Phone toll records indicate that ADAN's phone, 601-XXX-2587 had 3 contacts with CRANDALL's phone# 918-XXX-2899. Phone toll records indicate that BADILLO-Duarte's business phone, 702-XXX-5969 had 2 contacts with

CRANDALL's phone# 918-XXX-2899, on that same date.

**September 1, 2019**

73. Call# 2390 – TT1 – BADILLO-Duarte and ADAN - ADAN said that they grabbed their (Poss. Tulsa and from CRANDALL and SPRINKLE) and that they are heading up. BADILLO-Duarte acknowledged. BADILLO-Duarte told ADAN to be careful and not to confuse the roads. BADILLO-Duarte warned ADAN that it (Poss. GPS) will take them through the place where he got his car taken. ADAN acknowledged. BADILLO-Duarte said *unintelligible* and pass through Joplin (PH).

74. Phone toll records indicate that VICTOR's phone, 702-XXX-1078 had 2 contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**September 2, 2019**

75. Call# 2491 – TT1 – BADILLO-Duarte and an unidentified male ("UM3") with a phone number ending in 0346.  UM3 – BADILLO-Duarte said that there was a small problem there at the U (poss. Utah) where he had 2 clients and a guy got fucked over the same day that they delivered the things to them. BADILLO-Duarte said that they got fucked over with 2 of work, 10 of water and 70 of money between both of them.

76. Call# 2497 – TT1 – BADILLO-Duarte and MARTINEZ-Contreras - MARTINEZ-Contreras says she was going to get fucked. BADILLO-Duarte asks why. MARTINEZ-Contreras says because yesterday they (third parties) sent her (MARTINEZ-Contreras) money from over there then she (MARTINEZ-Contreras) sent it over here and now they are sending her from Oklahoma to *unintelligible* and they're asking her what she's doing and that security came. BADILLO-Duarte asks if she is trembling. MARTINEZ-Contreras negates. BADILLO-Duarte

says *unintelligible* MARTINEZ-Contreras acknowledges and says that there is police behind her.

77. SPRINKLE sent a money transfer of $400 through Western Union to MARTINEZ-Contreras and SPRINKLE listed her phone number as 918-XXX-2899 (phone number subscribed to CRANDALL). The money transfer was sent from Tulsa, OK to Las Vegas, NV.

**September 9, 2019**

78. A cash deposit of $1,500 was made to B of A acct# XX9782 in Tulsa, OK. The depositor was SPRINKLE, based on bank surveillance footage. Phone toll records indicate that BADILLO-Duarte's business phone, 702-XXX-5969 had 16 contacts with CRANDALL's phone# 918-XXX-2899, on that same date.

**October 16, 2019**

79. On October 16, 2019, BADILLO-Duarte, MARTINEZ-Contreras, DIAZ-Castillo, BADILLO-Valdiviezo, DOMINGUEZ, SALAZAR, GODINEZ, and others were indicted on federal drug violations in the District of Utah[5]. In addition, BADILLO-Duarte, MARTINEZ-Contreras, BADILLO-Valdiviezo, and DOMINGUEZ were indicted on federal money laundering violations. The dates of both conspiracies listed in the indictment are from May 2019 through October 3, 2019. SA Mickelsen conducted the federal money laundering investigation with the assistance of the DEA SLCDO, it's agents, officers, and contractors. After this indictment, SA Mickelsen and the DEA SLCDO's drug and money laundering investigation continued because of substantial cash deposits made to B of A acct# XX9782 in Tulsa, OK as detailed above.

**FINANCIAL ANALYSIS**

---

[5] Indictment, 2:19-cr-00384, District Court Judge Clark Waddoups

80. SA Mickelsen analyzed B of A acct# XX9782. B of A acct# XX9782 was opened in November 2018 by BADILLO-Duarte and MARTINEZ-Contreras. On December 1, 2018, the first deposit was made to this account in Las Vegas, NV and it consisted of $300 in cash. From December 2018 through September 2019, approximately $250,874 was deposited into B of A acct# XX9782 in which approximately $238,239, or 95%, consisted of cash deposits and purported cash deposits[6]. Based on further analysis, it was determined that of the $238,239 in cash deposits, approximately $211,686, or 89%, were made at bank branches located in Tulsa, OK.

81. Bank surveillance footage was requested for the individuals making the cash deposits into B of A acct# XX9782 at bank branches in Tulsa, OK. The request was narrowed to include only bank surveillance footage for cash transactions exceeding $1,000. SA Mickelsen analyzed the bank surveillance footage provided by Bank of America regarding the cash deposits that occurred in Tulsa, OK. All of the provided bank surveillance footage revealed that CRANDALL and SPRINKLE, sometimes alone and sometimes together, made the cash deposits into B of A acct# XX9782 in Tulsa, OK.

82. During this investigation, substantial phone toll records were obtained and the records were analyzed. The analysis detected a few phone numbers with Tulsa, OK "918" area codes that were in contact with BADILLO-Duarte, MARTINEZ-Contreras, VICTOR, and ADAN. As previously stated. The Tulsa, OK phone numbers as of interest were 918-XXX-2624 and 918-XXX-2899 and phone toll records revealed that both of these phone numbers were subscribed

---

[6] Some deposits have not been confirmed as cash deposits from the bank records but the deposits have the appearance of cash deposits based on even dollar amounts and following similar patterns of confirmed cash deposits. These deposits will be referred to as cash deposits.

to CRANDALL. Research, surveillance, and further investigation into CRANDALL revealed that CRANDALL's significant other is SPRINKLE. Once CRANDALL and SPRINKLE were identified, booking photographs of them were obtained and compared to the bank surveillance footage. SA Mickelsen compared the bank surveillance footage to the obtained booking photographs of CRANDALL and SPRINKLE and positively identified them as making the cash deposits to B of A acct# XX9782. Furthermore, in analyzing the bank surveillance footage, CRANDALL and SPRINKLE often arrived to the Tulsa, OK Bank of America branch locations in **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** as detailed in the previous section. **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** are the same vehicles seen on surveillance parked at the **SUBJECT RESIDENCE** on August 8, 2019.

83. SA Mickelsen conducted further analysis on B of A acct# XX9782 specifically for the conspiracy date range alleged in the indictment of BADILLO-Duarte et al of May 2019 through October 3, 2019. During this time period, approximately $97,629 in cash deposits were made to B of A acct# XX9782 in Tulsa, OK. Bank surveillance footage documents CRANDALL and SPRINKLE making approximately $48,310 in cash deposits to B of A acct# XX9782. The cash deposits not supported by bank surveillance footage are similar to confirmed CRANDALL and SPRINKLE cash deposits in comparison with the amounts that were deposited and the Tulsa, OK bank branch locations where the cash deposits occurred.

84. On November 14, 2019, SA Mickelsen signed a federal criminal complaint and obtained federal arrest warrants for CRANDALL and SPRINKLE out of the District of Utah for money laundering conspiracy violations[7]. The conduct alleged in the complaint consists of the same

---

[7] Criminal Complaint# 2:19mj787PMW, Conspiracy to Commit Money Laundering, District of Utah, Chief U.S.

conduct presented in this affidavit. The date range of the alleged conduct in the complaint is the same as the date range included in the BADILLO-Duarte et al indictment of May 2019 through October 3, 2019.

**OKLAHOMA DMV RECORDS AND RECENT SURVEILLANCE**

85. A search of the Oklahoma DMV records database listed CRANDALL's address as the **SUBJECT PREMISES**.

86. On November 13, 2019, TFO Chris Butterfield and TFO David Brice who are members of the DEA Tulsa office conducted surveillance on the **SUBJECT PREMISES** between the hours of 5:00 pm and 7:00 pm. While performing surveillance on the **SUBJECT PREMISES**, TFO David Brice watched CRANDALL exit the front door of the **SUBJECT PREMISES**, get into the 2000 WHITE TOYOTA COROLLA bearing Oklahoma plate# IMJ735 known as **SUBJECT VEHICLE 1**, and leave the **SUBJECT PREMISES**. After approximately 20 minutes, **SUBJECT VEHICLE 1** pulled back into the yard of the **SUBJECT PREMISES**. TFO David Brice watched SPRINKLE exit the driver's side of the vehicle and CRANDALL exit the passenger side of the vehicle and go into the **SUBJECT PREMISES**. TFO David Brice then watched SPRINKLE exit the front door of the residence and make contact with an unknown individual who pulled up in a gold Chevrolet Malibu and parked in the yard of the **SUBJECT PREMISES**. TFO David Brice noticed that after a short period of time, SPRINKLE went back into the **SUBJECT PREMISES**.

**MODUS OPERANDI OF DRUG TRAFFICKERS**

---

Magistrate Judge Paul M. Warner

87. Based upon my training, experience, and participation in other investigations involving the distribution of controlled substances and money laundering, I am aware of the following facts relating to drug traffickers, money launderers and those associated with drug trafficking and money laundering:

88. Drug traffickers and money launderers often keep notes, records, pay-owe sheets and other documents/paperwork that relate to drug distributing activities. I am aware that drug traffickers maintain written names, addresses and telephone numbers of their associates, including sources of supply and customers. I am aware that this written information can be found in the notes, records, pay-owe sheets and other documents/paperwork kept by drug distributors. I am aware that drug traffickers often document drug prices, drug types, amounts of drugs that have been bought and/or sold, amounts of money owed to sources of supply and amounts of money owed by customers. I am aware that this written documentation can be found in the notes, records, pay-owe sheets and other documents/paperwork kept by drug distributors. I am aware that drug traffickers often possess photographs of themselves, their associates, their property/assets and their drugs. I am aware that drug traffickers maintain these items within their residences, businesses, vehicles and/or other locations, which they maintain dominion and control over. I am aware that evidence of this may often be found on cell phones, electronic devices, and computer media.

89. Drug traffickers and money launderers often travel from place to place while conducting their drug business. I am aware that evidence documenting travel can often be found by examining a paper trail. I am aware that this paper trail consists of gas receipts, wire transfer receipts, plane tickets, maps, hotel receipts, restaurant receipts, credit card records and ATM receipts.

I am aware that drug traffickers maintain these records within their residences, businesses, vehicles and/or other locations, which they maintain dominion and control over. I am aware that evidence of this may be found on cell phones, electronic devices, and computer media.

90. Drug traffickers and money launderers that are engaged in money laundering frequently retain records of their transactions within their residence, place of business, rented storage units, safe deposit boxes, vehicles, or other places under their control. These records may be in the form of written notes and correspondence, receipts, negotiated instruments, contracts, bank statements, and other records. I am aware that evidence of this may be found on cell phones, electronic devices, and computer media.

91. Drug traffickers and money launderers that are engaged in drug trafficking and money laundering often maintain such records for long periods of time, particularly when they are involved in ongoing criminal conduct over a long period of time. Based on my experience and review of <u>United States v. Greany, 929 F2d 523 (9th Cir. 1991)</u>, the Ninth Circuit and other courts have held that, where there is an ongoing criminal business of a necessarily long term nature the passage of long periods of time will not make the evidence supporting the issuance of a warrant stale. It is believed that CRANDALL and SPRINKLE may have been involved in suspected money laundering since approximately December 2018.

92. There are many reasons why drug traffickers and money launderers maintain evidence for long periods of time. The evidence may be innocuous at first glance (e.g. financial, credit card and banking documents, travel documents, receipts, documents reflecting purchases of assets, personal calendars, telephone and address directories, check books, videotapes and photographs, utility records, ownership records, letters and notes, prescription receipts, tax

returns and financial records, escrow files, telephone and pager bills, keys to safe deposit boxes, packaging materials, computer hardware and software), but have significance and relevance when considered in light of other evidence. The drug trafficker and money launderer may no longer realize he/she still possesses the evidence or may believe law enforcement could not obtain a search warrant to seize the evidence. The drug trafficker and money launderer may also be under the mistaken belief that he/she has deleted, hidden or further destroyed any computer-related evidence, but which may be retrievable by a trained forensic computer expert.

93. The net worth/source and application of funds analyses show that a suspect's known expenditures and/or accumulation of assets substantially exceed his legitimate sources of income to prove that the suspect is engaged in illegal money generating activities, such as narcotics trafficking or fraud. The net worth analysis compares a suspect's net worth (cost value of total assets minus total liabilities) at a time just before the suspect has commenced his purported criminal enterprise, to his/her net worth at the approximate time of his/her arrest. The source and application of funds analysis focuses on the suspect's expenditures during the time period of the purported illegal activities and compares such expenditures with his legitimate sources of income. Both analyses require evaluation of bank records, credit records, loan records, prescription purchase receipts, documents evidencing ownership of assets, and other documents evidencing the financial profile of the suspect during the course of the purported illegal activity, as well as a short time period prior to the illegal activity (e.g., one year). Other than assisting in the net worth/source and application of funds analyses, a financial profile of a suspect prior to the purported criminal activity evidences changes in

lifestyle, asset accumulation, and expenditures between the time period prior to the illegal activity and the time period of the illegal activity that are consistent with a person generating income from illegal activities (e.g., narcotics trafficking or fraud), as compared to a person earning income from legitimate sources. Evidence of a defendant's expenditures, asset accumulation, financial life-style, net worth/source and application of funds analyses, and underlying financial documents necessary for such analyses are admissible evidence under federal case law in narcotic trafficking and money laundering cases. This establishes the need for such documents to be taken during the execution of a search warrant.

94. Drug traffickers and money launderers often purchase and/or title their assets, to include vehicles, in fictitious names, aliases or the names of relatives and associates. I am aware that drug traffickers and money launderers often rent houses, apartments, storage units, and vehicles in fictitious names, aliases or the names of relatives and associates. I am aware that even though these assets and/or rentals are in names other than the drug traffickers' and money launderers', the drug traffickers and money launderers actually own and/or exercise dominion and control over them. I am aware that drug traffickers and money launderers do this to conceal the assets and/or rentals from law enforcement and to thwart the efforts of law enforcement in apprehending and prosecuting them. I am aware that drug traffickers and money launderers often pay relatives and associates in cash and/or drugs to provide this service. I am aware that drug traffickers and money launderers often maintain documents related to residency. I am aware that these documents include, but are not limited to, mail and utility documents. I am aware that drug traffickers and money launderers often maintain titles and documents related to their assets and/or rentals. I am aware that drug traffickers and money launderers maintain

these items within their residences, businesses, vehicles and/or other locations, which they

maintain dominion and control over. I am aware that evidence of this may be found on cell

phones, electronic devices, and computer media.

95. Drug traffickers and money launderers maintain, on hand, amounts of United States currency

in order to maintain and finance their on-going drug distributing business. In addition, I am

aware that money launderers maintain, on hand, amounts of United States currency that

constitute proceeds from their money laundering activities.

96. Drug traffickers and money launderers often utilize banks and wire transfer services to launder

and move drug proceeds from place to place.  I am aware that drug traffickers and money

launderers use "funnel" bank accounts where drug proceeds are deposited into the bank

accounts in different geographic areas and then consolidated and withdrawn by the drug

trafficker or money laundering in their geographic area. I am aware that drug traffickers and

money launderers often maintain bank records and wire transfer records reflecting laundered

funds.  I am aware that drug traffickers and money launderers often "structure" their bank and

wire transactions into several small transactions in an attempt to conceal assets and thwart law

enforcement.  I am aware that drug traffickers and money launderers often maintain these

records within their residences, businesses, vehicles and/or other locations, which they

maintain dominion and control over.  I am aware that evidence of this may be found on cell

phones, electronic devices, and computer media.

97. Drug traffickers and money launderers communicate using cellular telephones.  I am aware

that drug traffickers and money launderers often use coded speech when communicating over

the telephone and that this coded speech is used to avoid law enforcement.  I am familiar with

the coded speech used by drug traffickers and money launderers. I am aware that drug traffickers and money launderers commonly maintain the telephone numbers and names of sources of supply and/or customers in the memory of their telephones. I am aware that drug traffickers and money launderers commonly keep their cellular telephones on their person or within their residences, businesses, vehicles and/or other locations, which they maintain dominion and control over. I am aware that physical telephones are evidence in drug trafficking and money laundering wire intercept investigations. I believe that cell phones and electronic devices used by CRANDALL and SPRINKLE will be recovered subsequent to a search of the **SUBJECT PREMISES, SUBJECT VEHICLE 1**, and **SUBJECT VEHICLE 2**.

98. Drug traffickers and money launderers belong to a culture that is governed by violence and they commonly possess firearms to protect their drugs, cash, and assets. I am aware that drug traffickers and money launderers commonly keep these firearms on their person or within their residences, businesses, vehicles and/or locations which they maintain dominion and control over.

## IV      ITEMS TO BE SEIZED – ATTACHMENT B, B-1 and B-2

99. Based on the foregoing, I respectfully submit that there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) – Possession with Intent to Distribute a Controlled Substance; Title 21, United States Code, Section 846 – Conspiracy to Distribute a Controlled Substance; Title 18, United States Code, Section 1956(h) – Conspiracy to Launder Monetary Instruments, and the following items which constitute evidence of these violations will be found at  the **SUBJECT PREMISES 1, SUBJECT VEHICLE 1** and

**SUBJECT VEHICLE 2** and are detailed in ATTACHMENT B, ATTACHMENT B-1 and ATTACHMENT B-2. This warrant seeks the authority to seize cell phones and electronic devices but not search them. All seized cell phones and electronic devices will be transported to the District of Utah where federal search warrants will be sought to search the cell phones and electronic devices for the SUBJECT OFFENSES.

<h3 style="text-align:center">V     CONCLUSION</h3>

100.    Based on the foregoing, my training and experience, and discussions with other law enforcement agents, I believe that there is probable cause to conclude that the **SUBJECT PREMISES, SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** contain fruits, instrumentalities, and evidence of violations of Title 21, U.S.C. §§ 841(a)(1) and 846, and Title 18 U.S.C. § 1956(h).

101.

_____
William Mackenzie, TFO DEA

Subscribed and sworn to before me on this 20th day of November, 2019.

_____
Jodi F. Jayne
United States Magistrate
Northern District of Oklahoma

**ATTACHMENT A**

**LOCATION TO BE SEARCHED**

The **SUBJECT PREMISES** to be searched is located and described as follows:

1723 SOUTH 79th EAST AVENUE, TULSA, OKLAHOMA 74112, described as a single family residence that is the first residence south of East 17th street and located on the east side of south 79th East Avenue. The numbers 1723 are located on the west side of the residence near the front door. The residence is constructed of a white front door that faces west, white siding, gray trim and a sloped roof. The residence contains a one car garage.

To include the **SUBJECT PREMISES** and all attics, basements, storage areas, safes, out buildings, vehicles, and any other container or conveyance located within the curtilage of the **SUBJECT PREMISES**.



**ATTACHMENT A-1**

**VEHICLE TO BE SEARCHED**

**SUBJECT VEHICLE 1** to be searched is described as follows:

A vehicle owned by and registered to Dawn SPRINKLE, a 2000 WHITE TOYOTA COROLLA, VIN# 1NXBR12E6YZ381964 with Oklahoma plate# IMJ735, registered to the **SUBJECT PREMISES**.

## ATTACHMENT A-2

### VEHICLE TO BE SEARCHED

**SUBJECT VEHICLE 2** to be searched is described as follows:

A vehicle owned by and registered to Dawn SPRINKLE and Neil CRANDALL, a 2004 CHEVROLET TRAILBLAZER, VIN# 1GNDS13S642127495 with Oklahoma plate# FPB398, registered to the **SUBJECT PREMISES.**

## ATTACHMENT B

## Items to Be Seized

The items to be searched for and seized are those items on the persons and on the premises located at 1723 South 79th East Avenue, Tulsa, OK 74112 (**SUBJECT PREMISES**), in the vehicles, safes, locked containers, and outbuildings on the premises, relating to Neil CRANDALL, Dawn SPRINKLE, and their coconspirators that contain evidence, contraband, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, conspiracy to possess with the intent to distribute a controlled substance and 18 U.S.C. § 1956(h), money laundering conspiracy. The items to be seized cover the period of December, 2018 through the date of the execution of the search warrant.

The items referenced above to be searched for and seized are as follows:

a) U.S. currency and other monetary instruments including cashier's checks.

b) Records accounting for the distribution of illegal drugs, the remittance of drug proceeds, and the acquisition and sale of beauty products including records of drug sales, lists of persons who owe money and who are owed money, accounting books, receipts, purchase orders, notes, ledgers, notebooks, computer spreadsheets, forms of "pay/owe sheets," and records relating to the transportation, ordering, purchase, manufacturing, cultivation and distribution of controlled substances.

c) Personal telephone and address books and listings, letters, telephone bills, personal notes, passwords, and other items reflecting names, addresses and telephone numbers, and communications.

d) Bank account records, wire transfer records, credit card records, prepaid debit card

Page 1 – Attachment B

statements and reloadable cards, debit cards, credit cards, bank statements, deposit items,

cancelled checks, payroll records, safe deposit box keys and records, financial

instruments and financial records showing payment, receipt, concealment, transfer, or

movement of money.

e) Corporation, business, and "doing business as" (DBAs) filings, minutes, and records.

f) Records, documents, titles, mortgage paperwork, and deeds reflecting the purchase, rental

   or lease of any real estate, car, truck, motorcycle, boat, plane, real estate and/or any other

   property relating to proceeds derived from narcotics trafficking and/or laundered.

g) Federal and State tax returns to include all related schedules, forms, and attachments.

h) Indicia of occupancy, residency, rental or ownership of the **SUBECT PREMISES**,

   **SUBJECT VEHICLE 1**, and **SUBJECT VEHICLE 2**, namely, utility bills, telephone

   bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and

   escrow documents.

i) Keys to show ownership for storage facilities, businesses, locked containers, cabinets,

   safes, conveyances and/or other residences.

j) Travel records to document travel relating to the distribution of controlled substances, the

   laundering of drug proceeds, to include gas receipts, wire transfer receipts, plane tickets,

   maps, hotel receipts, restaurant receipts and ATM receipts.

k) Shipping records, mailing records, air bills, shipping labels, applications, and

   correspondence, which was delivered by private contract and/or the U.S. Postal Service.

**Page 2 – Attachment B**

l)  Photographs, videos, magazines, instructional books, and any video or audio recordings pertaining to production, possession, or distribution of controlled substances and/or assets obtained with drug proceeds.

m) Packaging and other supplies used in the shipment and distribution of controlled substances and money laundering.

n)  Cell phones and electronic devices. These items will be seized but not searched. These items will be transported to the District of Utah and search warrants will be sought to search any of these items that are seized from the **SUBJECT PREMISES.**

**Page 3 – Attachment B**

## ATTACHMENT B -1

### Items to Be Seized

The items to be searched for and seized are those items in **SUBJECT VEHICLE 1** relating to Neil CRANDALL, Dawn SPRINKLE, and their coconspirators that contain evidence, contraband, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, conspiracy to possess with the intent to distribute a controlled substance and 18 U.S.C. § 1956(h), money laundering conspiracy. The items to be seized cover the period of December, 2018 through the date of the execution of the search warrant.

The items referenced above to be searched for and seized are as follows:

a) U.S. currency and other monetary instruments including cashier's checks.

b) Records accounting for the distribution of illegal drugs, the remittance of drug proceeds, and the acquisition and sale of beauty products including records of drug sales, lists of persons who owe money and who are owed money, accounting books, receipts, purchase orders, notes, ledgers, notebooks, computer spreadsheets, forms of "pay/owe sheets," and records relating to the transportation, ordering, purchase, manufacturing, cultivation and distribution of controlled substances.

c) Personal telephone and address books and listings, letters, telephone bills, personal notes, passwords, and other items reflecting names, addresses and telephone numbers, and communications.

d) Bank account records, wire transfer records, credit card records, prepaid debit card statements and reloadable cards, debit cards, credit cards, bank statements, deposit items, cancelled checks, payroll records, safe deposit box keys and records, financial

**Page 1 – Attachment B**

instruments and financial records showing payment, receipt, concealment, transfer, or movement of money.

e) Corporation, business, and "doing business as" (DBAs) filings, minutes, and records.

f) Records, documents, titles, mortgage paperwork, and deeds reflecting the purchase, rental or lease of any real estate, car, truck, motorcycle, boat, plane, real estate and/or any other property relating to proceeds derived from narcotics trafficking and/or laundered.

g) Federal and State tax returns to include all related schedules, forms, and attachments.

h) Indicia of occupancy, residency, rental or ownership of the **SUBECT PREMISES**, **SUBJECT VEHICLE 1**, and **SUBJECT VEHICLE 2**, namely, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents.

i) Keys to show ownership for storage facilities, businesses, locked containers, cabinets, safes, conveyances and/or other residences.

j) Travel records to document travel relating to the distribution of controlled substances, the laundering of drug proceeds, to include gas receipts, wire transfer receipts, plane tickets, maps, hotel receipts, restaurant receipts and ATM receipts.

k) Shipping records, mailing records, air bills, shipping labels, applications, and correspondence, which was delivered by private contract and/or the U.S. Postal Service.

l) Photographs, videos, magazines, instructional books, and any video or audio recordings pertaining to production, possession, or distribution of controlled substances and/or assets obtained with drug proceeds.

**Page 2 – Attachment B**

m) Packaging and other supplies used in the shipment and distribution of controlled substances and money laundering.

n) Cell phones and electronic devices. These items will be seized but not searched. These items will be transported to the District of Utah and search warrants will be sought to search any of these items that are seized from **SUBJECT VEHICLE 1**.

**Page 3 – Attachment B**

**ATTACHMENT B -2**

**Items to Be Seized**

The items to be searched for and seized are those items in **SUBJECT VEHICLE 2**
relating to Neil CRANDALL, Dawn SPRINKLE, and their coconspirators that contain evidence,
contraband, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846, conspiracy
to possess with the intent to distribute a controlled substance and 18 U.S.C. § 1956(h), money
laundering conspiracy.  The items to be seized cover the period of December, 2018 through the
date of the execution of the search warrant.

The items referenced above to be searched for and seized are as follows:

a) U.S. currency and other monetary instruments including cashier's checks.

b) Records accounting for the distribution of illegal drugs, the remittance of drug proceeds,
and the acquisition and sale of beauty products including records of drug sales, lists of
persons who owe money and who are owed money, accounting books, receipts, purchase
orders, notes, ledgers, notebooks, computer spreadsheets, forms of "pay/owe sheets," and
records relating to the transportation, ordering, purchase, manufacturing, cultivation and
distribution of controlled substances.

c) Personal telephone and address books and listings, letters, telephone bills, personal notes,
passwords, and other items reflecting names, addresses and telephone numbers, and
communications.

d) Bank account records, wire transfer records, credit card records, prepaid debit card
statements and reloadable cards, debit cards, credit cards, bank statements, deposit items,
cancelled checks, payroll records, safe deposit box keys and records, financial

Page 1 – Attachment B

instruments and financial records showing payment, receipt, concealment, transfer, or movement of money.

e) Corporation, business, and "doing business as" (DBAs) filings, minutes, and records.

f) Records, documents, titles, mortgage paperwork, and deeds reflecting the purchase, rental or lease of any real estate, car, truck, motorcycle, boat, plane, real estate and/or any other property relating to proceeds derived from narcotics trafficking and/or laundered.

g) Federal and State tax returns to include all related schedules, forms, and attachments.

h) Indicia of occupancy, residency, rental or ownership of the **SUBECT PREMISES**, **SUBJECT VEHICLE 1**, and **SUBJECT VEHICLE 2**, namely, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents.

i) Keys to show ownership for storage facilities, businesses, locked containers, cabinets, safes, conveyances and/or other residences.

j) Travel records to document travel relating to the distribution of controlled substances, the laundering of drug proceeds, to include gas receipts, wire transfer receipts, plane tickets, maps, hotel receipts, restaurant receipts and ATM receipts.

k) Shipping records, mailing records, air bills, shipping labels, applications, and correspondence, which was delivered by private contract and/or the U.S. Postal Service.

l) Photographs, videos, magazines, instructional books, and any video or audio recordings pertaining to production, possession, or distribution of controlled substances and/or assets obtained with drug proceeds.

**Page 2 – Attachment B**

m) Packaging and other supplies used in the shipment and distribution of controlled substances and money laundering.

n) Cell phones and electronic devices. These items will be seized but not searched. These items will be transported to the District of Utah and search warrants will be sought to search any of these items that are seized from **SUBJECT VEHICLE 2**.

**Page 3 – Attachment B**